UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

CHARLES DENVER BAKER,          )
                               )
          Plaintiff,           )   Civil Action No. 5:10-CV-188-JMH
                               )
     v.                        )
                               )   **MEMORANDUM OPINION AND ORDER**
BECTON, DICKINSON AND          )
COMPANY,                       )
                               )
          Defendant.           )
                               )


          **        **        **        **        **

     This action is before the Court on Defendant's Motion for
Summary Judgment [DE 36].  Plaintiff has filed a Response [DE 38],
and Defendant has made a Reply in further support of its Motion [DE
44].  This motion is now ripe for decision and, for the reasons
stated below, will be granted.

I.     **FACTUAL BACKGROUND**

     Plaintiff Denver Baker's employment at Defendant Becton,
Dickinson and Company ("BD") was terminated after he was placed on
a performance improvement plan and failed to meet certain
performance goals.  Baker, who was fifty-eight-years-old at the
time of his termination, alleges that he was terminated because of
his age in violation of the Age Discrimination in Employment Act
("ADEA"), 29 U.S.C. § 621, *et seq*., and the Kentucky Civil Rights
Act ("KCRA"), KRS § 344, *et seq*.  Baker avers that he was subjected
to discrimination, harassment/hostile work environment, and

retaliation.

BD is a global medical technology company which develops, manufactures and sells medical supplies. Baker was employed by BD from 1987 until his termination in September 2008. During the time relevant to this lawsuit, Baker was employed as an Account Business Manager ("ABM") in the Infectious Disease division of BD's Diagnostics business segment. As an ABM, he was responsible for creating sales opportunities with new and existing clients and was required to travel regularly. He was also expected to perform various administrative tasks such as tracking sales cycles and logging communications with existing and potential customers.

BD categorizes its products into different "buckets." One reason that the buckets are significant is that different buckets represent different levels of profitability for BD. Accordingly, BD weights the buckets differently when assessing an employee's performance. The product bucket most relevant to this lawsuit is BACTEC. BACTEC, which consists of blood testing products, is the most heavily weighted bucket because it is most significant to BD from a profitability standpoint. Much of the parties' dispute regarding Baker's work performance concerns the acquisition and loss of BACTEC accounts.

Throughout the course of Baker's employment, BD had in place an Equal Opportunity Guideline as well as a Harassment Policy which encouraged employees to raise concerns related to their employment

and specifically required reporting of alleged harassment. Associates were also encouraged to contact the BD Ethics Helpline with any concerns they may have wished to report anonymously. Baker was aware of BD's policy against harassment and knew that there was a procedure in place for reporting incidents of workplace harassment. He did not utilize any of these reporting mechanisms regarding the allegations at issue here.

During the time relevant to this lawsuit, Baker reported to Mike Nugent, who was in his thirties at the time. Nugent became Baker's immediate supervisor when BD restructured its sales regions and the mid-Atlantic region was created in October 2006. Baker's only annual performance review under Nugent was favorable, although it was noted that Baker had lost an important BACTEC account with Jewish Healthcare. Subsequently, Baker's sales declined in some areas. Specifically, Baker lost business amounting to over $100,000 in sales of manual rapid testing products ("RMT") and lost at least one other BACTEC account. Baker's sales continued to decline into 2008, and he ranked last in the region in RMT and BACTEC sales.

Following these losses, Nugent and his immediate supervisor, Richard Briggs (born 1946), decided to place Baker on an informal performance improvement plan ("PIP"). Nugent instructed Baker to create a plan to improve his sales and make up for the losses that he had sustained. Baker did so but did not meet all of the goals

created in the plan.  As a result, Nugent, Briggs, and Michelle
Erickson, BD's Human Resources partner, made the decision to place
Baker on a formal PIP.  The PIP contained goals addressing Baker's
problems with administrative duties, account management, and sales
productivity and effectiveness.  The PIP included specific thirty,
sixty and ninety-day goals, which included the goal that Baker lose
no additional BACTEC accounts.  Baker failed to meet several of the
thirty-day goals, and he subsequently lost another BACTEC account,
Highlands Regional.  Following these events, Nugent, Erickson and
Briggs decided to terminate Baker for poor performance.

Baker contends that the true reason he was fired was because
of his age.  He avers that Nugent was interested in having a
younger sales force and that he systematically terminated older
employees or coerced them into resigning.  He also asserts that
Nugent set him up to fail by creating the goal of losing no
additional BACTEC accounts, because Nugent knew at the time that
the Highlands Regional account was essentially lost.  Further, he
asserts that Nugent did not approve a BACTEC contract with
Highlands Regional that would have prevented him from losing the
account.  In support of his arguments, Baker offers evidence of
ageist comments made by Nugent.  Specifically, he reports that
Nugent told him that he was "too old" and "too slow," that he was
making assumptions that younger people do not make, and that Nugent
did not want anyone over the age of forty in sales.  Because Baker

fails to raise a genuine issue of material fact as to whether BD acted in violation of the ADEA or the KCRA, BD is entitled to summary judgment on all claims.

## II.  APPLICABLE STANDARD OF REVIEW

The standard for summary judgment mirrors the standard for directed verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986).  A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325.  The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).  A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *See Niemi v. NHK Spring Co., Ltd.,* 543 F.3d 294, 298 (6th Cir. 2008).  A genuine dispute exists on a material fact, and thus summary judgment is

improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 249; *Summers v. Leis,* 368 F.3d 881, 885 (6th Cir. 2004).

The judge's function is not to weigh the evidence, but to decide whether there are genuine issues for trial. *Anderson,* 477 U.S. at 249; *Multimedia 2000, Inc. v. Attard,* 374 F.3d 377, 380 (6th Cir. 2004). The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment. *Anderson,* 477 U.S. at 255; *Summers,* 368 F.3d at 885.

## III. DISCUSSION

**A. Baker's claims under the Kentucky Civil Rights Act fail because there is no genuine issue as to whether BD employed eight or more individuals within the state during the relevant time period.**

The Kentucky Civil Rights Act applies to employers having eight or more employees within the state in each of twenty or more calendar weeks in the current or preceding calendar year. KRS § 344.030(2). Because Baker's termination occurred in 2008, the relevant years in this case are 2008 and 2007. *See Higdon v. Premier Concrete Pumping, Inc.,* No. 3:08-CV-127-H, 2008 WL 2548805 at *1 (W.D. Ky. June 23, 2008).

While Baker asserts that BD employed more than eight individuals during the relevant time period, he does not offer sufficient proof of that assertion to raise a genuine issue of

material fact. Baker testified that BD had six sales representatives in Kentucky during 2007 and 2008. He also makes the vague assertion that "a few BD researchers" remained in Kentucky after the closing of BD's manufacturing facility and were housed at the University of Kentucky in Lexington. He also claims that "within the last five years," he took a tour of a BD shipping facility "which is run by BD employees."

Michelle Erickson, BD's Human Resources partner, stated in a sworn affidavit that during 2006, 2007 and 2008, BD had seven employees working in Kentucky. Further, BD offers the sworn declaration of Jerry Hurwitz, who was BD's Human Resources Vice President in 2003. Hurwitz acknowledges that BD previously owned a business unit called Transduction Laboratories, which was located in Lexington, Kentucky. Hurwitz states, however, that the entire Transduction Laboratories facility was closed in 2003, and all of the employees who worked there were either terminated or transferred to a BD facility outside Kentucky. He further attests that BD housed no employees in any capacity at the University of Kentucky following the closing of Transduction Laboratories.

BD offers additional evidence to rebut Baker's claim that BD had employees at a shipping facility in Northern Kentucky. In his sworn declaration, Ewald Parolari, Senior Director of Supply Chain Operations for BD, states that BD did utilize a shipping facility in Hebron, Kentucky, but that the shipping facility was wholly

owned and operated by United Parcel Services.  He further attested that BD never owned or performed any operations there, nor did it employee or house any employees at the shipping facility.

Based on the evidence adduced by both parties, no reasonable juror could find that BD had eight or more employees in Kentucky during the relevant time period.  The number of employees BD had in Kentucky is an essential element of Baker's KCRA claims against BD. *See Arbaugh v. Y & H Corp.,* 546 U.S. 500, 515 (2006) (holding that "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief . . ."); *Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.,* 132 S.W.3d 790, 801-02 (Ky. 2004) (noting that Kentucky courts interpret the KCRA consistently with Title VII).  Baker's only evidence of the number of employees BD had during the relevant time period is his own unsubstantiated belief.  Because BD has offered substantial evidence regarding the number and location of BD employees that were within Kentucky, it is clear that the KCRA does not apply. Therefore, summary judgment for BD is appropriate as to Baker's claims against it under the KCRA.

> **B.   Because Baker's direct evidence fails to raise a genuine issue  of material fact as to whether age was the but-for reason for his termination, BD is entitled to summary judgment on Baker's direct evidence claim.**

Baker alleges that ageist comments made by his supervisor Mike Nugent approximately four months prior to his termination

constitute direct evidence of discrimination. These comments are alleged to have been made during telephonic "performance discussions" between Nugent and Baker that occurred around the same time that Baker was placed on the informal PIP. Baker states that, on April 14, 2008, Nugent told him that he was making assumptions that younger people do not make. Then, on April 21, 2008, Nugent reportedly told Baker that he was too old, lacked energy and eagerness, and was not the kind of sales representative that BD wanted to build its future on. Finally, on or about April 23, 2008, Nugent allegedly told Baker that he was too old and too slow, and that Nugent did not want anyone over the age of forty in sales. Regardless of whether a plaintiff pursues his age discrimination claim with direct or circumstantial evidence, he or she has the burden of proving, by a preponderance of the evidence, that age was the but-for reason for an adverse employment decision. *See Geiger v. Tower Auto.,* 579 F.3d 614, 621 (6th Cir. 2009) (citing *Gross v. FBL Fin. Serv., Inc.,* - U.S. -, 129 S.Ct. 2343, 2351 (2009)). Because no reasonable juror could conclude, on the facts before this Court, that but-for Baker's age he would not have been terminated, Baker's direct evidence claim fails.

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.,* 360 F.3d 544, 548 (6th Cir. 2004). Accordingly, direct evidence of age discrimination requires the conclusion that

age was a basis for an adverse employment decision. *See Imwalle v. Reliance Med. Prods., Inc.,* 515 F.3d 531, 543-44 (6th Cir. 2008). While the decision to terminate Baker's employment was a collaborative one, it is undisputed that Nugent played a meaningful role in making the decision. In determining whether statements made by decision makers constitute direct evidence of discrimination, courts must consider their content to determine whether they meet the high threshold required of direct evidence. *See Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 348 (6th Cir. 1997) (noting that the requirement of direct evidence is "a nearly impossible burden" because such evidence rarely exists).

The first purportedly ageist comment attributed to Nugent – that Baker was making assumptions that younger people do not make – clearly does not require the conclusion that discrimination was behind the decision to terminate Baker's employment. Under the ADEA, employers may not consider an employee's age for its own sake, but an employer can consider other factors that may correlate with age. *See Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993). If Nugent expressed dissatisfaction with the fact that Baker was making certain assumptions, that does not mean that Nugent was dissatisfied with Baker simply because of his age. Although Nugent's manner of expressing himself referred to age, the statement does not reflect an animus based on age. The statement simply suggests that Nugent was not pleased with assumptions Baker

had been making in the course of his job performance.

Next is the statement that Baker was too old, lacked energy and eagerness and that he was not the kind of sales representative upon which BD wanted to build its future. While the "too old" portion of the statement relates directly to age, the bulk of the statement does not. The record indicates that Nugent was dissatisfied with Baker's failure to implement new sales strategies and to call on his customers as frequently as BD protocol required. Nugent's statement that Baker lacked energy and eagerness did not necessarily relate to age. Any employee is capable of lacking energy and eagerness, regardless of age and, as a result, such an employee might not be the type upon which BD would want to build its future.

Finally comes the statement that Baker was "too old" and "too slow" and that Nugent did not want anyone over the age of forty in sales. This statement, too, is insufficient to require the conclusion that but-for Baker's age, he would not have been terminated. The record indicates that, at times, Baker had difficulty keeping his administrative tasks up to date and that he failed to make requisite number of sales calls per day. If Nugent told Baker that he was "too slow," he very well could have been referring to these deficiencies in Baker's performance, not his age. Nugent's statement that he did not want anyone over forty in sales, while offensive, expressed only his general attitude and not

his feelings toward Baker specifically. *See Phelps v. Yale Sec., Inc.,* 986 F.2d 1020, 1025 (6th Cir. 1993) (noting that age-related comments referring directly to the worker may support an inference of age discrimination). Further, while Nugent was a decision maker, he did not make the decision on his own. Baker's termination required, at least, the approval of Griggs and Erickson. Baker has alleged no evidence whatsoever suggesting that Griggs or Erickson harbored a discriminatory animus toward older workers.

Baker asserts that his case is most closely analogous to *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241 (6th Cir. 1995), one of the few discrimination-in-employment cases in the Sixth Circuit in which direct evidence has been established. In *Talley*, an African-American sous chef claimed that he was not rehired by the defendant because of his race. The court concluded that repeated racial slurs made by multiple supervisors on a regular basis constituted direct evidence of discrimination, sufficient to create a jury question. *Id.* at 1249-50. *Talley* is easily distinguished from the case at bar, where only three ageist comments are alleged to have been made, portions of which do not actually focus on age, but rather Baker's job performance. The statements allegedly made by Nugent are also a far cry from those in *Birch v. Cuyahoga Cnty. Probate Court*, 392 F.3d 151, 165 (6th Cir. 2004), upon which Baker relies as well. (finding direct

12

evidence where judge defended pay difference between male and female magistrates by telling females that he did not have to hire women and men did the important work of the court).

It is a rare case in which a plaintiff will prevail on direct evidence of discrimination, because "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age," constitute direct evidence. *Scott v. Potter,* 182 F. App'x 521, 526 (6th Cir. 2006) (quoting *Carter v. City of Miami,* 870 F.2d 578, 582 (11th Cir. 1989)). The Sixth Circuit clarified the standard by providing an example in the context of the Americans with Disabilities Act. "I fired you because you are disabled" is the type of statement that constitutes direct evidence. *Smith v. Chrysler Corp.,* 155 F.3d 799, 805 (6th Cir. 1998). It is only this type of statement that truly satisfies the definition – no inference is necessary to conclude that discrimination occurred. Although the alleged statements here may raise suspicion as to Nugent's motives, the comments themselves could not lead a reasonable jury to conclude that Baker would not have been terminated if it were not for his age. Accordingly, Baker's allegations regarding these statements fail to raise a genuine question of material fact as to whether age was the but-for cause of his termination.

**C. Because Baker fails to raise a genuine issue of material fact as to whether BD's legitimate, non-discriminatory reason for terminating his employment was actually pretext for age discrimination, BD is entitled to summary judgment.**

To successfully assert a prima facie case of age discrimination using circumstantial evidence, Baker must establish the four elements of the widely known *McDonnell Douglas* test, modified for the age discrimination context.[1] *See Bush v. Dictaphone Corp.,* 161 F.3d 363, 368 (6th Cir. 1998). To do so, Baker must show that he was at least forty-years-old at the time of the discrimination; that he was subject to an adverse employment decision; that he was otherwise qualified for the position he held; and that he was replaced by substantially younger worker. *See id*. It is undisputed that Baker was over the age of forty at the time of his termination and that he was replaced by a younger individual. Accordingly, the only prima facie element in dispute is whether Baker was qualified for the position of ABM.

A qualified individual must perform "at a level which [meets] his employer's legitimate expectations." *McDonald v. Union Camp*

---

[1] Following the Supreme Court's decision in *Gross*, the continued viability of the *McDonnell Douglas* burden shifting approach, as applied to ADEA claims, has been called into question. *Geiger,* 579 F.3d at 622 (6th Cir. 2009) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)). The Sixth Circuit has "long found the *McDonnell Douglas* framework useful" in analyzing these claims, however, and it remains the applicable law in this circuit with respect to circumstantial claims under the ADEA. *Id.*

*Corp.,* 898 F.2d 1155, 1160 (6th Cir. 1990). BD asserts that Baker had not been meeting BD's expectations for quite some time, and that the loss of BACTEC accounts was simply the final straw in his already lackluster job performance. Baker argues that BD cannot use its legitimate nondiscriminatory reason for his termination to argue that he was unqualified. *See Cicero v. Borg-Warner Auto., Inc.,* 280 F.3d 579, 585 (6th Cir. 2002) (stating that a "court must evaluate whether a plaintiff established his qualifications independent of the employer's proffered nondiscriminatory reasons for discharge"). Assuming for the sake of argument that Baker can establish that he was qualified for the position of ABM, and, thus, can establish a prima facie claim of age discrimination, his claim ultimately fails because he has not established that BD's stated legitimate nondiscriminatory reason for the termination of his employment was pretext.

Once a prima facie showing of discrimination is made, the burden shifts to BD to come forward with evidence of a legitimate, nondiscriminatory basis for its action. Here, BD must produce evidence sufficient for a trier of fact to conclude that Baker was fired for poor job performance. *See Allen v. Highlands Hosp. Corp.,* 545 F.3d 387, 395 (6th Cir. 2008). This is simply a burden of production, and the Court does not assess the credibility of Defendant's evidence. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000).

BD reports that in December 2007, Baker had lost significantly more BACTEC and RMT business than any other ABM in the mid-Atlantic region and was last in the region when comparing current and prior year sales performance. BD cites Baker's fiscal year 2007 performance review, which noted that Baker had lost the Jewish Hospital BACTEC account and included goals for increased effectiveness. In March, 2008, Baker remained last in his region in RMT and BACTEC sales, and he has not disputed his sales figures and rankings. Baker argues that the loss of BACTEC accounts is pretext for a discriminatory dismissal because, in fact, he gained a lucrative BACTEC account with the University of Kentucky, which more than made up for the accounts lost. However, there is ample evidence in the record showing that Baker had other performance issues outside the area of BACTEC sales. Baker admits that he was aware of his deficiencies and, during his deposition, stated that he did not believe that his age was the only reason he was placed on the PIP. Based on the foregoing evidence, a reasonable juror could find that Baker was indeed fired because of his poor job performance or, at the very least, that age was not the but-for reason for his dismissal.

In order to survive BD's motion for summary judgment, Baker must adduce evidence sufficient to raise a genuine question as to whether BD's legitimate reason for terminating him was pretext for age discrimination. *See Hedrick v. Western Reserve Care Sys.,* 355

F.3d 444, 460 (6th Cir. 2004). Plaintiffs generally prove pretext in one of three ways - by showing that the employer's proffered reasons had no basis in fact, that the employer's proffered reasons did not actually motivate the adverse employment action and that the actual reason was intentional discrimination, or that the employer's proffered reasons were insufficient to motivate the adverse action. *Id.* Because Baker has failed to raise a genuine issue of material fact with respect to any of these alternatives, BD is entitled to summary judgment.

Baker does not contend that BD's proffered reason has no basis in fact. Additionally, Baker has failed to adduce any evidence that BD's proffered reasons were insufficient to motivate his discharge. In attempting to prove that they were, he points to a BD employee named Rodney Sinchak (born 1965). Baker argues that Sinchak lost a BACTEC account and was not terminated. Baker fails to show, however, that Sinchak's work performance was similar to his own in any other way. BD contends that, unlike Baker's, Sinchak's overall work performance had no deficiencies. Because Baker has failed to show that he and Sinchak had the same performance issues, yet were treated dissimilarly, his argument on this front is unavailing. *See Shah v. Gen. Elec. Co.,* 816 F.2d 264, 268 (6th Cir. 1987).

Baker attempts to show that BD's proffered reasons did not actually motivate his discharge through the use of circumstantial

17

evidence. First, he cites the ageist comments alleged to have been made to him by Nugent in April 2008. Next, he offers evidence of what he characterizes as Nugent's systematic elimination of older workers. Further, he argues that BD has unfairly exaggerated his sales losses and minimized his successes. Finally, he asserts that, in creating the PIP goal of "no new BACTEC losses," Mike Nugent purposefully set him up for failure.

As discussed in the Court's analysis of Baker's direct evidence claim, the ageist statements attributed to Nugent are not enough, considered in isolation, to raise a genuine fact question that age was the but-for reason behind Baker's termination. Even considered in conjunction with Baker's other circumstantial evidence, the statements do not raise a genuine issue as to pretext.

The Court turns to Baker's assertion regarding Nugent's systematic elimination of older workers. Statistical data showing an employer's pattern of conduct with respect to a protected class can be used to create an inference that the employer discriminated against an individual member of the class. *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1466 (6th Cir. 1990). Even a small statistical sample can serve as circumstantial evidence of discrimination. *Cicero,* 280 F.3d at 593. According to Baker, there were six ABMs and two Instrument Specialists in the mid-Atlantic division, under Nugent's supervision, during the two years

following the division's creation. Out of the six ABMs, two, other than Baker, left their employment with BD while under Nugent's supervision. Beverly Callahan, who resigned, was fifty-eight-years-old at the time. Margaret Braddy, who was terminated, was fifty-one. BD reports that Braddy was having performance issues similar to those of Baker. She was placed on a PIP and was subsequently terminated after not meeting the goals assigned to her. Callahan resigned after having had a performance discussion with Nugent. While Baker suggests that Callahan's resignation was not voluntary, he makes no specific allegations of wrongdoing on the part of Nugent or BD. Baker does not allege having any further knowledge of the specific circumstances of Braddy's or Callahan's departures from BD. Rather, he simply asserts that each was over the age of fifty and was either was terminated or resigned. In its Reply Memorandum, BD reports that Margaret Braddy was actually replaced by someone two years older than her.

The statistical evidence proffered by Baker fails to support any inference of age discrimination. According to Baker, after he, Callahan and Braddy were "eliminated," the ages of the remaining ABMs and Instrument Specialists in the mid-Atlantic Region were: forty-nine; fifty-five; thirty-three; forty-one; and forty-three. These numbers simply to do not support an inference of age discrimination because the majority of workers remaining in Nugent's region were members of the protected class.

In further support of his claim of pretext, Baker offers evidence of his sales performance in 2007, the year he characterizes as his strongest. Defendant concedes that Plaintiff's sales numbers for some product buckets improved during 2007, but Baker admits that he lost the Jewish Healthcare BACTEC account during that year. As previously stated, the loss of the Highlands Regional BACTEC account in 2008 was the trigger for Baker's termination. Within twenty days of Baker's termination, BD learned that an additional BACTEC account was lost under Baker's watch, as well. Baker contends that he gained a BACTEC account with the University of Kentucky, worth one million dollars over five years, which more than made up for the accounts that were lost. Sales figures, however, were not the only problem with Baker's job performance. The record reveals that Baker used a more passive sales style than Nugent desired and that he failed to make the requisite number of sales calls per day. Further, Baker testified that he did not think his age was the only reason he was placed on the PIP. Additionally, he stated that while it would have been difficult to meet the goals established in the formal PIP, the goals were not unrealistic.

Ultimately, Baker has the burden of proving not only that Defendant's proffered nondiscriminatory reason was not the actual reason for his termination, but also that the real reason was his age. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993);

*Gragg v. Somerset Technical Coll.,* 373 F.3d 763, 768 (6th Cir. 2004). While the merit of Plaintiff's work performance is debatable, he has failed to produce evidence sufficient to raise a genuine question as to whether his age was the real reason he was fired. Perhaps Nugent did initiate Baker's termination for reasons other than just his work performance. Perhaps, as Baker urges, Nugent did set him up to fail, based on the "no new BACTEC losses" goal. As long as Nugent's actions were not based on Baker's age, however, his conduct is not actionable under the ADEA. Because Baker has failed to raise a genuine issue of material fact with respect to whether he was terminated because of his age, summary judgment for BD is granted on Baker's claim of discrimination under the ADEA.

> **D. BD is entitled to summary judgment on Baker's claim of harassment under the ADEA because Baker fails to raise a genuine issue of material fact as to whether he was subjected to harassment or whether his workplace was objectively unreasonable.**

A Title VII violation occurs "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57 at 65, 67 (1986)). The same principles that apply to Title VII harassment/hostile environment claims apply to such claims brought

under the ADEA, as well. *Crawford v. Medina Gen. Hosp.,* 96 F.3d 830, 834 (6th Cir. 1996). To establish a prima facie claim under the ADEA, Baker must show: that he is forty years old or older; that he was subjected to harassment, either through words or actions, based on age; that the harassment had the effect of unreasonably interfering with his work performance and created an objectively intimidating, hostile, or offensive work environment; and there exists some basis for liability on the part of Defendant. *Id.* at 834-35.

Baker urges the Court to consider evidence of Nugent's ageist statements, the elimination of other older workers, BD's placing pressure on him to retire and a mysterious pay cut that occurred prior to his termination. Baker also argues that his experiences at BD caused him to suffer a "silent heart attack," though Baker has offered no proof, other than his testimony, to support that claim. BD argues that Baker is barred from raising any circumstances other than those alleged in his EEOC charge. Even considering the circumstances in their totality, however, Baker's allegations do not rise to the level of actionable harassment under the ADEA, as defined by the Sixth Circuit. *See Crawford,* 96 F.3d at 835-36.

A hostile work environment "'involves repeated conduct' and require[s] the plaintiff to demonstrate that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult

that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Hunter v. Sec'y of U.S. Army,* 565 F.3d 986, 994 (6th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115-16 (2002)). In determining whether a work environment is hostile, the Court considers the frequency and severity of the discriminatory conduct, whether humiliation or physical threats were involved, as opposed to mere utterances and whether the conduct interferes with an employee's work performance. *Crawford,* 96 F.3d at 835. Here, Baker's harassment claim fails due to his lack of proof under both the second and third prongs of the prima facie case.

The ageist statements alleged to have been made by Mike Nugent do not rise to the level of actionable harassment. When considered together, the statements – that Baker was too old and slow; that he lacked energy and enthusiasm; and that Nugent did not want anyone over the age of forty in sales – are not sufficient to have created an objectively hostile work environment. Rather, these statements are merely "offensive utterances." *Id.* at 836 (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 22 (1993). The fact that so few ageist comments are alleged to have been made, coupled with the relatively tame nature of the comments, places them below the severity threshold required for a finding of harassment. *See id.* (finding that two ageist comments, while not insubstantial, were

not particularly severe or degrading, and did not create a hostile work environment).

Baker's argument that the circumstances surrounding his termination, when considered in their totality, constitute a hostile work environment fails as well. Baker's assertion regarding the elimination of other older workers is unavailing. Baker characterizes Nugent's actions as a "deliberate campaign to eliminate the workers over 50 from his sales division." In support of this allegation, Baker points to two other employees over the age of fifty whose employment with BD ended prior to Baker's termination. One of those two employees resigned, while the other was terminated due to performance issues. Baker suggests that the employee who resigned did not do so voluntarily, but he provides no factual support to demonstrate that BD acted improperly with respect to that employee. Out of the five remaining ABMs and Instrument Specialists working under Nugent, four were over the age of forty. Although Baker insists that BD was placing pressure on him to retire, he has offered no evidence to raise a genuine issue that that was the case. Additionally, Baker refers to a mysterious pay cut as evidence of harassment. The record reveals that this was likely an administrative oversight due to Baker's being placed on medical leave for knee surgery that he had decided to forgo. Baker offers no evidence to establish that the pay cut was the result of BD's wrongdoing, or that it was in any way associated

with a discriminatory animus against him because of his age.

Ultimately, Baker has not presented evidence sufficient to raise a genuine question of material fact as to whether he was subjected to actionable harassment or whether his work environment was objectively hostile. Nor has he presented evidence to show that harassment had the effect of unreasonably interfering with his work. *See Crawford,* 96 F.3d at 834-35. While the ageist statements alleged to have been made by Nugent are undoubtedly rude, they do not rise to a level which constitutes harassment. The other circumstances alleged by Plaintiff do little to further his claim of harassment. Based on the evidence proffered, reasonable minds could only conclude that Baker was not harassed or subjected to a hostile work environment. Accordingly, BD's motion for summary judgment on this claim is granted.

**E. BD is entitled to summary judgment on Baker's retaliation claim because Baker failed to exhaust his administrative remedies.**

Baker avers that at various times during 2008, he complained to individuals both inside and outside of BD regarding BD's age-related discrimination. Further, he avers, BD's decision to terminate him was based in whole or in part on the fact that he had complained. BD is entitled to summary judgment on this issue because Baker failed to exhaust his administrative remedies.

A plaintiff must file a charge with the EEOC before filing an age-discrimination claim in federal court. *See Davis v. Sodexho,*

25

*Cumberland Coll. Cafeteria,* 157 F.3d 460, 463 (6th Cir. 1998).
Generally, EEOC charges must allege any claims a plaintiff wishes
to pursue in federal court. *See Abeita v. TransAmerica Mailings,
Inc.,* 159 F.3d 246, 254 (6th Cir. 1998). Because retaliation often
occurs as the result of an employee's filing an EEOC charge,
however, an exception may lie for plaintiffs who experience
retaliation after they have filed a charge with the EEOC. *Id.*
Baker filed his EEOC charge on February 17, 2009, several months
after his termination. Since Baker alleges that protected activity
resulted in his termination, any protected activity necessarily
would have occurred well before the filing of his EEOC charge.
Accordingly, there is no practical reason that Baker would have
been prevented from alleging retaliation in the charge.

It is undisputed that Baker did not check the box for
retaliation when completing his charge. He argues, however, that
the facts alleged in his EEOC charge were sufficient to raise the
issue. Even read liberally, Baker's charge is insufficient to have
exhausted his administrative remedies with respect to this claim.
The "expected scope of investigation test" is satisfied when
"'facts related with respect to the charged claim would prompt the
EEOC to investigate a different, uncharged claim'" and thus, "'the
plaintiff is not precluded from bringing suit on that claim.'"
*Weigel v. Baptist Hosp. of East Tenn.,* 302 F.3d 367, 380 (6th Cir.
2002) (quoting *Davis,* 157 F.3d at 463).

In his EEOC charge, Baker reported the date that Mike Nugent became his supervisor, described three ageist comments alleged to have been made, and stated that he was placed on a performance improvement plan and was subsequently terminated. Nowhere in the charge does Baker refer to any protected activity or even hint at retaliation. Baker's failure to check the retaliation box, coupled with his failure to allege facts that raise even the slightest inference of retaliation are fatal to his retaliation claim. *See Spengler v. Worthington Cylinders,* 615 F.3d 481, 490 (6th Cir. 2010) (finding that, although plaintiff did not check the box for retaliation, he alleged sufficient facts in EEOC charge by stating that supervisor's behavior toward him changed following complaint of discrimination). Because Baker did not allege retaliation in his EEOC charge and his allegations do not satisfy the "expected scope of investigation test," he did not exhaust his administrative remedies on the issue of retaliation and thus, BD is entitled to summary judgment on this claim.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment will be **GRANTED**.

This the 6th day of October, 2011.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge